J-S35027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| CALVIN L. MCKINNEY | : | |
| Appellant | : | No. 592 MDA 2025 |

Appeal from the PCRA Order Entered April 11, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001117-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| CALVIN MCKINNEY | : | |
| Appellant | : | No. 593 MDA 2025 |

Appeal from the PCRA Order Entered April 11, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000188-2020

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.: **FILED: NOVEMBER 3, 2025**

Calvin L. McKinney (Appellant) appeals from the order dismissing his first petition timely filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

Appellant's convictions stem from two shooting incidents in Harrisburg, Pennsylvania, targeting Keynen Guider (the victim). The PCRA court[1] summarized the facts underlying the first incident as follows:

On December 27, 2017, there was an altercation between Appellant and [the v]ictim. Appellant was driving a pepperdust metallic Chevrolet Impala, with a license plate number of FAC5639[,] that he rented from Enterprise. Appellant's girlfriend[, Erica Smith (Erica),] testified that [the v]ictim was driving a black vehicle.

[The victim's cousin, Ariele Morrison (Ms. Morrison), advised police that, t]wo days later, on December 29, 2017, … [the v]ictim was driving her black Kia Optima[, which she had permitted the victim to use]. Around noon[], Teresa Smith was outside of her residence, bringing recycling bins in, when she heard a popping noise. She walked to the street and saw a light-skinned male shooting up [on] 20th Street. She went inside her home and called 911. Carla Goicoechea [(Ms. Goicoechea)] was inside of her residence on the second floor when she heard gunshots and looked out her window. She observed a black vehicle speeding away up 20th Street, and a light-skinned male shooting toward the black vehicle.

When police arrived, Ms. Goicoechea provided them [with] information about the shooter. On January 15, 2018, Ms. Goicoechea met with Detective Richard Iachini [(Detective Iachini)] and selected Appellant out of a photo array.[2] …. Ms. Goicoechea watched the shooter get into what she believed was a brown Chevrolet Impala and provided three digits ("FCG") of the license plate. While on scene, police collected eleven .40 caliber [shell casings].

_____

[1] The Honorable William T. Tully presided over all proceedings relevant to this appeal.

[2] Ms. Goicoechea also identified Appellant as the shooter at trial. N.T., 8/31-9/3/20, at 143.

- 2 -

In addition, Appellant's phone records show[ed] that he was in the area of 20th and Market Streets, very close to where the shooting occurred[,] at the time it occurred.

PCRA Court Opinion, 3/12/25, at 2-3 (citation, brackets and ellipses omitted; punctuation modified; footnote added).

The PCRA court further summarized the shooting incident resulting in the victim's death:

[At approximately 1:30 a.m., on] December 31, 2017, police responded to a call of a male shot near 1938 Brookwood Street. [The v]ictim was found in the driver's seat of his running vehicle with a gunshot wound to his head. Shortly thereafter, a second victim, Javon McKinnon[ (Mr. McKinnon, a/k/a, "Wooty")], was located and had sustained injuries to the leg and groin area. Mr. McKinnon testified that he was with [the v]ictim in the early morning hours of December 31, 2017. [The v]ictim was dropping Mr. McKinnon off near 1938 Brookwood Street when Mr. McKinnon saw two figures appear from behind his wife's van, shooting at them. Mr. McKinnon jumped back into the car and heard [the v]ictim scream out. While ducking from the gunfire and trying to grab [the victim], Mr. McKinnon looked up and realized the car was rolling toward a pole (the car was running and still in drive when police arrived), and jumped out. [Mr. McKinnon fled] and eventually [arrived] at his mother's home at 1938 Brookwood Street, where officers [] located him.

Police collected a total of twelve [shell casings] from the scene. After analysis, it was determined that seven of the twelve [shell casings] were from the same unknown firearm and the remaining five were from a second unknown firearm. It was further determined that the seven [shell casings] collected on December 31, 2017[,] were from the same unknown firearm as the eleven [shell casings] collected on December 29, 2017. None of the [shell casings] collected and tested were from the firearm [that police] found in the [v]ictim's vehicle.

All of Appellant's cell phone activity prior to 3:00 a.m. on December 31, 2017, occurred in the City of Harrisburg. Specifically, Appellant received four phone calls between 12:38 a.m. and 1:28 a.m. on December 31, 2017, and each [pinged] the

specific sector of each [cell] tower that would cover the direction of the homicide. Appellant's call activity show[ed] that he remained in the Harrisburg area until approximately 3:00 a.m.[,] when he travelled to the Philadelphia area ….

***Id.*** at 3 (citation, brackets and ellipses omitted; capitalization modified).

We previously summarized the procedure following Appellant's arrest:

On January 24, 2018, Appellant was charged at Docket Number CP-22-000113-2018 (attempt docket) with[, *inter alia*,] criminal attempt – criminal homicide ….[3] Simultaneous[ly] …, Appellant was charged at Docket Number CP-22-0001117-2018 (murder docket) with[, *inter alia*,] criminal homicide[, and] conspiracy[4] – criminal homicide …. The attempt docket and murder docket were formally joined on June 13, 2018.

A jury trial was held … from August 12 through August 16, 2019[ (the first trial), at which Appellant was represented by Roy Galloway, Esquire (Attorney Galloway)]. Appellant was found guilty at the attempt docket of criminal attempt – homicide.[5] The jury was hung on the remaining charges at the murder docket. [The Commonwealth elected to retry Appellant for the charges on which the jury could not reach a verdict. Additionally, b]ased on what transpired during the first trial, Appellant was charged with perjury[6] on October 3, 2019[,] at Docket Number CP-22-CR-0000188-2020 (perjury docket).[7] A joinder hearing was held on

_____

[3] 18 Pa.C.S.A. §§ 901, 2502(a).

[4] 18 Pa.C.S.A. § 903.

[5] On October 21, 2019, for his attempted murder conviction, the trial court sentenced Appellant to a term of ten to twenty years in prison.

[6] 18 Pa.C.S.A. § 4902(a).

[7] The Commonwealth alleged that Appellant lied in his testimony supporting his alibi defense:

[At the first trial, Appellant] … testified to a transaction listed on his Belco Credit Union bank records in reference to a hotel

*(Footnote Continued Next Page)*

February 4, 2020, and after submission of post-hearing briefs, th[e trial] court granted the Commonwealth's motion. Therefore, the murder docket and perjury docket were joined for purposes of trial.

A second jury trial was held … on August 31 through September 3, 2020[ (the second trial), at which Appellant was represented by Amanda Batz, Esquire (Attorney Batz)]. Appellant was found guilty of 1st degree murder, conspiracy, and perjury.

On September 29, 2020, the trial court sentenced Appellant to [an aggregate term of] life in prison without parole. Appellant filed a timely post-sentence motion[,] which the court denied ….

*Commonwealth v. McKinney*, 266 A.3d 614 (Pa. Super. 2021) (unpublished memorandum at 2-3) (citation and brackets omitted; formatting modified; footnotes added).

Attorney Batz timely appealed Appellant's convictions at the murder and perjury dockets, challenging the sufficiency and weight of the evidence supporting Appellant's convictions, and arguing the trial court erred by joining the murder and perjury dockets for trial. On October 6, 2021, we affirmed Appellant's judgment of sentence. *See id.* Our Supreme Court denied

---

reservation that was made through Priceline.com on 12/10/17. [Appellant] stated that the transaction was in reference to a hotel reservation in the King of Prussia, Pennsylvania[,] area for a pre-planned trip [to occur] on 12/31/17. … [Subsequent investigation revealed] that the transaction was actually for a check-in date of December 9, 2017[,] and a check-out date of December 10, 2017[,] at the Days Inn by Wyndham in Grantville, PA. Grantville is approximately twenty minutes north of Harrisburg[,] and is approximately 1.5 hours from King of Prussia.

Affidavit of Probable Cause, 10/3/19, at 1.

Appellant's petition for allowance of appeal on May 25, 2022. ***See***

***Commonwealth v. McKinney***, 279 A.3d 37 (Pa. 2022).

On July 20, 2023, Appellant, represented by counsel (PCRA counsel), timely filed the instant PCRA petition, his first. Therein, Appellant alleged Attorney Batz was ineffective for failing to

(1) call Branden Gilmore (Mr. Gilmore) to testify that he overheard Mr. McKinnon state that the victim was murdered "as part of a 'contract hit' involving an individual known as Taysia Layton" (Ms. Layton);

(2) recall Ms. Morrison to elicit testimony concerning an allegedly exculpatory statement she did not disclose at trial, but which she included in her recorded interview with Detective Iachini, a copy of which Attorney Batz did not receive until after Ms. Morrison testified at the second trial;

(3) subpoena Appellant's emails or records from Booking.com to support Appellant's alibi defense, and to refute his perjury charge, by establishing that Appellant had mistakenly relied on his Priceline.com reservation in the first trial;

(4) call Erica or Appellant's mother, Brenda McKinney (Ms. McKinney), to support Appellant's alibi defense; and

(5) raise on direct appeal the Commonwealth's alleged ***Brady***[8] violation for failing to provide Appellant with Ms. Morrison's recorded interview with Detective Iachini.[9]

---

[8] ***See Brady v. Maryland***, 373 U.S. 83, 87 (1963) (holding that due process prohibits the prosecution from suppressing evidence material to guilt or punishment).

[9] At the second trial, Attorney Batz requested a mistrial (which the trial court denied) after discovering, while cross-examining Detective Iachini, that Ms. Morrison participated in a recorded police interview that the Commonwealth allegedly did not provide to Attorney Batz in discovery. ***See*** N.T., 8/31-9/3/20, at 584. The Commonwealth thereafter provided Attorney Batz a copy
*(Footnote Continued Next Page)*

- 6 -

PCRA Petition, 7/20/23, at 10, 12-15, 18, 20-22; *see also id.* at 23 (Appellant additionally alleging that "[r]egardless of whether the above alleged errors individually entitle [Appellant] to relief, they cumulatively do ….").

The PCRA court conducted evidentiary hearings on December 18, 2023, and January 24, 2024.  On March 12, 2025, the PCRA court issued an opinion and, although not required, notice of its intention to dismiss Appellant's petition.  *See* Pa.R.Crim.P. 907 (requiring the PCRA court to give notice of its intention to dismiss a PCRA petition without a hearing).  The PCRA court filed its final order dismissing Appellant's PCRA petition on April 11, 2025. Appellant filed a timely notice of appeal.[10]  Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises the following six issues:

1.      Whether the PCRA court erred in finding that [Attorney Batz] was effective in failing to adequately investigate and call [Mr.] Gilmore?

2.      Whether the PCRA court erred in finding [Attorney Batz] was effective in failing to re[]call [Ms.] Morrison after it was learned

---

of Ms. Morrison's interview, and made Ms. Morrison available for testimony the following day.  *Id.* at 578, 585, 597.  Attorney Batz reviewed Ms. Morrison's interview overnight, and, ultimately, elected not to recall Ms. Morrison.  *Id.* at 597.

Pertinently, in her recorded interview (transcribed and admitted into evidence at the PCRA hearing as Exhibit 1), Ms. Morrison stated that the victim told her that he was in a nearby convenience store when her car was damaged by gunfire.  Exhibit 1 at 4.

[10] On May 13, 2025, we consolidated Appellant's appeals *sua sponte*.

that the Commonwealth had failed to disclose exculpatory evidence?

3.      Whether the PCRA court erred in finding that [Attorney Batz] was effective in failing to raise on appeal the Commonwealth's failure to disclose exculpatory evidence[, *i.e.*, Ms.] Morrison['s] interview[,] to [Attorney Batz]?

4.      Whether the PCRA court erred in finding that [Attorney Batz] was effective in failing to provide evidence that [Appellant] stayed at a hotel in King of Prussia?

5.      Whether the PCRA court erred in finding that [Attorney Batz] was effective in declining to present the testimony of Erica [] and [Ms.] McKinney[?]

6.      Whether the PCRA court erred in failing to grant relief on [Appellant's] cumulative error claim?

Appellant's Brief at 6 (issues reordered).

When reviewing the denial of a PCRA petition, we examine "whether the PCRA court's conclusions are supported by the record and free from legal error." **Commonwealth v. Johnson**, 289 A.3d 959, 979 (Pa. 2023) (citation omitted).

> The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding.

**Commonwealth v. Maxwell**, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*) (citations omitted); **see also Commonwealth v. Sandusky**, 324 A.3d 551, 564 (Pa. Super. 2024) ("The PCRA court's credibility determinations, when supported by the record, are binding on this Court[.]"). "In contrast, we review the PCRA court's legal conclusions *de novo*." **Id.** A PCRA petitioner

- 8 -

"has the burden of persuading [an appellate c]ourt that the PCRA court erred and that such error requires relief." *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019); *see also Sandusky*, 324 A.3d at 564 ("We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party.").

Each of Appellant's issues challenge Attorney Batz's effectiveness. Appellant's Brief at 4. A PCRA petitioner claiming ineffective assistance of counsel

> will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). The law presumes that counsel acted effectively. *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023). A PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018); *see also Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014) ("As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." (citation omitted)); *Commonwealth v. Evans*, 303 A.3d 175, 183 (Pa. Super. 2023) ("Our evaluation of counsel's performance is highly deferential." (citation and quotation marks omitted)).

To overcome the presumption of counsel's effectiveness, a PCRA petitioner must plead and prove each of the following three prongs:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from ***Commonwealth v. Pierce***, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citations modified); ***see also Evans***, 303 A.3d at 182 ("We need not analyze the prongs of an ineffectiveness claim in any particular order.  Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case.").

If a petitioner fails to prove any … prong[] [of the ineffectiveness test], his claim fails.  Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests.  Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success **substantially greater than the course actually pursued**.  To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted; emphasis added); ***see also Commonwealth v.***

- 10 -

*Mason*, 130 A.3d 601, 618 (Pa. 2015) ("With regard to 'reasonable basis,' the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, the court must examine whether counsel's decisions had any reasonable basis." (citation, brackets, and some quotation marks omitted)).

In his first claim, Appellant argues Attorney Batz rendered ineffective assistance by failing to call Mr. Gilmore to testify at trial. Appellant's Brief at 18. In support of his claim, Appellant cites Mr. Gilmore's transcribed interview with law enforcement (admitted into evidence at the PCRA hearing as Exhibit 8), wherein Mr. Gilmore indicated that he overheard Mr. McKinnon tell Mr. Gilmore's brother that Appellant did not shoot the victim. *Id.* (citing Exhibit 8 at 1-2). Appellant emphasizes that Mr. Gilmore's statement instead implicated Ms. Layton as the perpetrator of the victim's murder as part of a "contract hit." *Id.* (citing Exhibit 8 at 1).

Appellant faults Attorney Batz for failing to have her private investigator interview Mr. Gilmore or to ensure that Mr. Gilmore was served with a valid subpoena compelling him to attend trial. *Id.* at 19-21. Further, Appellant argues that Attorney Batz's decision not to call Mr. Gilmore to testify, due to his substantial *crimen falsi* convictions, could not be supported, as she did not interview Mr. Gilmore or observe him to independently gauge his credibility. *Id.* at 20-21. In sum, Appellant concludes that

> Attorney Batz lacked an objective[ly] reasonable basis for not
> calling [Mr.] Gilmore and presenting his testimony to impeach

- 11 -

[Mr.] McKinnon[,] where she failed to interview him or have him interviewed by her private investigator[,] and *crimen falsi* convictions do not *per se* render a person's testimony incredible.

*Id.* at 21 (citations omitted).

As we have recently reiterated,

[i]t is axiomatic that when a PCRA petitioner claims counsel was ineffective for failing to call a witness, he or she must establish (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) **the witness was willing to testify for the defense**; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Abdul-Ali*, ___ A.3d ___, 2025 WL 2726433, at *9 (Pa. Super. filed Sept. 25, 2025) (emphasis added); *see also Commonwealth v. Van Horn*, 797 A.2d 983, 988 (Pa. Super. 2002) (rejecting the appellant's claim that his trial counsel should have called a particular witness to testify at trial, where the appellant "failed to demonstrate that [the witness] was available and prepared to testify on [the a]ppellant's behalf at trial.").

To demonstrate [] prejudice, **a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case**. Counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel[,] for such decision usually involves matters of trial strategy.

*Commonwealth v. Matias*, 63 A.3d 807, 811 (Pa. Super. 2013) (*en banc*) (citations and quotation marks omitted; emphasis added).

Instantly, the PCRA court concluded Attorney Batz's strategic decision to refrain from calling Mr. Gilmore to testify was reasonable for several reasons. PCRA Court Opinion, 3/12/25, at 6-10. Pertinently, the PCRA court also concluded that Appellant's first issue lacks arguable merit, because Mr. Gilmore's proffered testimony at the PCRA hearing would have been inadmissible at trial. *Id.* at 9. The PCRA court observed that

> [i]n evaluating counsel's trial decision-making, first, "trial counsel will not be considered ineffective for failing to pursue meritless claims." *Commonwealth v. Freeland*, 106 A.3d 768, 778 (Pa. Super. 2014). [Appellant's] underlying claim as to [the] admission of [Mr.] Gilmore's statement lacks merit in that the statement constituted inadmissible hearsay. [Mr.] Gilmore testified [at] the PCRA evidentiary hearing that he knew of the potential shooter from "just general conversation around people." N.T., 1/24/24, at 10. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802. [Attorney Batz] was not ineffective for refraining from pursuing a meritless issue.

*Id.* at 9-10 (some citations modified; brackets omitted).

The PCRA court's factual findings are supported by the record, and we agree with its legal conclusion.

Our review discloses that, at the January 24, 2024, PCRA hearing, Appellant asked Mr. Gilmore to verify the accuracy of **only** his answer to the last question on the first page of his transcribed interview. N.T., 1/24/24, at 8-10; *see also id.* at 8 (the PCRA court granting Mr. Gilmore's request to

confer with his attorney prior to answering Appellant's question). The pertinent question posed by Detective Kirk Aldrich (Detective Aldrich) during the interview, and Mr. Gilmore's answer, follows:

> Q: … [J]ust [] briefly explain to me [] what you know or what brought you here today as far as knowledge of [the victim's] homicide.
>
> A: … I was speaking to a guy that was currently on the scene of the homicide that … also got shot. Nickname[] goes by [] Wooty[, *i.e.*, Mr. Gilmore]. [**I**]**t was brought to my attention** that[,] the night the homicide took place, that [the] shooter wasn't actually who it was, [*i.e.*, Appellant]. … [I]t was a female related due to a contract hit. And [] she goes by the name of Taysia Layton.

Exhibit 8 at 1 (emphasis added; formatting modified). At the PCRA hearing, Mr. Gilmore indicated that the above response was accurate. N.T., 1/24/24, at 10. However, as observed by the PCRA court, when Appellant asked from whom he learned this information, Mr. Gilmore responded, "Just general conversation around people." *Id.*; *but see* Exhibit 8 at 2 (Mr. Gilmore agreeing with Detective Aldrich that he learned the above information after overhearing a conversation between his brother and "Wooty"). Mr. Gilmore's hearsay testimony would clearly have been inadmissible at trial, absent some exception to the hearsay rule, which Appellant fails to offer.[11]

---

[11] Appellant correctly notes that "evidence that facially appears to be hearsay can be admissible evidence under appropriate circumstances." Appellant's Brief at 23 n.7 (citing ***Commonwealth v. Small***, 189 A.3d 961 (Pa. 2018)). However, Appellant only argues that Mr. Gilmore's statement could have been used at trial to impeach Mr. McKinnon. ***See id.*** at 23-25. As stated *supra*, Mr. Gilmore did not testify at the PCRA hearing that Mr. McKinnon apprised
*(Footnote Continued Next Page)*

Even if Mr. Gilmore's statement had been admissible at trial, Appellant failed to establish that Mr. Gilmore was willing to testify on Appellant's behalf at the time of trial. *See Abdul-Ali*, 2025 WL 2726433, at *9; *Van Horn*, 797 A.2d at 988. In his document entitled "Witness Certifications," filed several months after his PCRA petition and signed by PCRA counsel,[12] Appellant summarized Mr. Gilmore's anticipated PCRA hearing testimony: "[Mr.] Gilmore is expected to testify that if served with a subpoena[,] he would have appeared to testify at [Appellant's] trial[,] and that he would have testified consistent with the recorded interview he provided in the presence of his attorney[.]" Witness Certifications, 12/15/23, at 2 (unpaginated). However, at the PCRA hearing, **Appellant did not ask Mr. Gilmore about his willingness to testify at Appellant's trial, nor did Mr. Gilmore offer such an assurance**.[13]

_____

him of the information he disclosed in his statement; rather, he learned this information from "general conversation around people." N.T., 1/24/24, at 10. Because Appellant fails to set forth other "appropriate circumstances" that would render Mr. Gilmore's statement admissible, his admissibility argument fails. *See Matias*, 63 A.3d at 811 ("[A] petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.").

[12] *See* 42 Pa.C.S.A. § 9545(d)(1)(ii) (providing that where a PCRA petitioner is unable to secure an intended witness's signed certification, the petitioner or counsel must include a signed certification setting forth, *inter alia*, the substance of the witness's testimony).

[13] Indeed, although under subpoena, Mr. Gilmore did not appear for the December 18, 2023, PCRA hearing. *See* N.T., 12/18/23, at 90-91 (PCRA
*(Footnote Continued Next Page)*

Because Appellant's claim regarding the admissibility of Mr. Gilmore's statement lacks arguable merit, and because Appellant failed to establish that Mr. Gilmore would have been willing to testify on his behalf at trial, his first issue entitles him to no relief.

In his second issue, Appellant claims Attorney Batz was ineffective for failing to call Ms. Morrison to testify at trial, consistent with her recorded interview with police, that the victim told her that he was not in Ms. Morrison's vehicle when it sustained damage from gunfire. Appellant's Brief at 28, 34. Appellant contends that this detail in Ms. Morrison's interview would have "squarely and directly undercut the Commonwealth's theory and evidence that, on December 29, 2017, [Appellant] shot at [the victim] while [the victim] was driving [Ms.] Morrison's car on 20th Street, away from Market Street." *Id.* at 35.

Appellant argues that Attorney Batz's belief that the victim's "excited utterance/present sense impressions would not have been admissible was unreasonable." *Id.* (citing N.T., 1/23/23, at 39). Appellant further argues that Attorney Batz's decision not to recall Ms. Morrison "because she believed she had impeached [Ms. Morrison] over her submission of false information for purposes of her car insurance [] lacks any reasonable basis …." *Id.* at 36.

---

counsel explaining, "I was informed that [Mr. Gilmore] was at the hospital with a girlfriend of some sort who is having a baby. I can't represent to the [c]ourt whether that's true or not.").

- 16 -

The PCRA court explained its reasoning for rejecting Appellant's second issue as follows:

Attorney Batz testified that she first learned of … [Ms. Morrison's interview] during cross[-]examination of Detective Iachini. N.T., 12/18/23, at 30; *see also* N.T., 8/31-9/3/20, at 577-82. … During a sidebar discussion with the [trial c]ourt, Attorney Batz stated that she received [discovery] from [Attorney Galloway], organized the [discovery] materials and prepared an inventory list[,] which she emailed to Attorney Galloway. *Id.* at 32-34. The prosecutor … represented to the [trial c]ourt that he emailed [Ms. Morrison's transcribed interview] to Attorney Galloway on June 6, 2019. N.T., 8/31-9/3/20, at 577-82. Attorney Batz first saw the transcript of [Ms. Morrison's interview during] trial. N.T., 12/18/23, at 35.

Attorney Batz testified that she received the entire police report in advance of trial. *Id.* at 37. … The police report does not include reference by [Ms.] Morrison as to [the victim's] location at the time of the [December 29, 2017,] shooting. *Id.* at 38.

In light of the discovery [that Attorney Batz was not provided Ms. Morrison's interview], the Commonwealth made [Ms.] Morrison available … as a witness for the defense. N.T., 8/31-9/3/20, at 593, 599.

… Attorney Batz testified that she reviewed [Ms.] Morrison's transcribed statement that evening to make the determination as to whether to continue questioning [Ms.] Morrison. N.T., 12/18/23, at 39. Attorney Batz … was satisfied that she obtained the information she required without the need for additional testimony from [Ms.] Morrison. *Id.* ….

Attorney Batz testified that had she received [Ms. Morrison's] interview before trial, she may have explored … to some extent [Ms. Morrison's statement that the victim advised her that he was not in the car when it was shot]. However, Attorney Batz explained her strategy regarding [Ms.] Morrison was focused upon [Ms.] Morrison having lied to police about the damage to the vehicle[,] and [Ms.] Morrison's apparent attempt to commit insurance fraud. *Id.* at 39. Attorney Batz felt comfortable that[,] based upon her testimony, [Ms.] Morrison appeared [to be] a liar. *Id.*

....

> [The PCRA court found] Attorney Batz's trial strategy of leaving in place the impression for the jury that [Ms.] Morrison lied to police and committed insurance fraud reasonable and designed to effectuate [Appellant's] interest.

PCRA Court Opinion, 3/12/25, at 13-14 (record citations modified).

The PCRA court's factual findings are supported by the record, and we discern no legal error in the court's conclusion that Attorney Batz's decision not to recall Ms. Morrison was based on a reasonable trial strategy. *See Johnson*, 289 A.3d at 979; *Spotz*, 84 A.3d at 311.

The record discloses that, on direct examination, Ms. Morrison testified that she did not notify police that her car had been shot on December 29, 2017, because the victim stated that he would have it repaired. N.T., 8/31-9/3/20, at 160. Ms. Morrison explained that she made a police report regarding the damage to her vehicle when the victim died, so that she could "get it fixed." *Id.* at 162. Ms. Morrison admitted that she lied to police when she told them that she had walked outside to her vehicle on January 1, 2018, and discovered it had sustained damage from gunshots. *Id.* In her cross-examination, Attorney Batz highlighted Ms. Morrison's initial deception by eliciting Ms. Morrison's agreement that she had made a false report to law enforcement, and that she had sought to commit insurance fraud. *Id.* 163-64; *see also id.* at 623 (in her closing argument, Attorney Batz stating, "Ariele Morrison, ... she committed insurance fraud.").

- 18 -

Further, in addition to Ms. Morrison admitting to making a false report to law enforcement to support her fraudulent insurance claim, her account of where the victim was during the December 29, 2017, shooting would have been in direct conflict with the account of Ms. Goicoechea (a disinterested eyewitness), who testified that she observed Appellant shooting at the victim until the victim fled in Ms. Morrison's vehicle. *See* N.T., 8/31-9/3/20, at 144. We cannot agree that Attorney Batz's strategy was unreasonable, or that the course Appellant proposes on appeal would have afforded Appellant a substantially greater likelihood of success. *See Spotz*, 84 A.3d at 311; *Mason*, 130 A.3d at 618. Accordingly, the PCRA court did not err in concluding Attorney Batz's trial strategy was reasonable, and Appellant's second issue merits no relief.

In his third issue, Appellant claims Attorney Batz was ineffective for failing to raise on direct appeal the Commonwealth's alleged *Brady* violation concerning the nondisclosure of Ms. Morrison's interview. Appellant's Brief at 25. Appellant argues that the Commonwealth, despite providing Attorney Galloway with Ms. Morrison's statement prior to the first trial, failed to satisfy its obligation under *Brady* to ensure that Attorney Batz was in possession of all exculpatory evidence. *Id.* at 26.

According to Appellant, Ms. Morrison's interview "was material evidence that was favorable to [Appellant] because it directly contradicted the Commonwealth's theory." *Id.* at 29. Reiterating his prejudice argument

above, Appellant maintains that "the failure to provide Attorney Batz with [Ms.] Morrison['s] interview was highly prejudicial[,] as the jury was *never aware* that [the victim] placed himself at an entirely different location than when it was alleged [Appellant] first shot at [the victim]." *Id.* (emphasis in original). Appellant emphasizes that Attorney Batz "admitted that she would have questioned [Ms.] Morrison differently had she had [Ms. Morrison's interview] before her testimony." *Id.* at 33 (emphasis omitted).[14] Appellant concludes that, but for Attorney Batz's alleged ineffectiveness on appeal, "there is a reasonable probability that the result of the appeal would have been different." *Id.* at 32.

Initially, we recognize that a ***Brady*** claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1084 (Pa. 2020); ***see also Commonwealth v. Antidormi***, 84 A.3d 736, 748 (Pa. Super. 2014) (stating that, in evaluating a ***Brady*** claim, "[a] reviewing court is not to review the evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." (citation omitted)). Concerning alleged ***Brady*** violations, "[t]he defendant bears the burden of demonstrating that the Commonwealth withheld or suppressed evidence." ***Commonwealth v.***

---

[14] At the PCRA hearing, PCRA counsel asked Attorney Batz whether she would have questioned Ms. Morrison concerning her interview had it been provided before trial. N.T., 12/18/23, at 38. Attorney Batz responded, "I probably would have gotten into a little bit of it." *Id.* at 39.

*Smith*, 17 A.3d 873, 887 (Pa. 2011) (citation omitted). "In the PCRA context, a petitioner must demonstrate that the alleged *Brady* violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Mickeals*, 335 A.3d 13, 24 (Pa. Super. 2025) (citation omitted).

Our Supreme Court has explained that

> to establish a *Brady* violation, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; **and prejudice must have ensued. Evidence is material and must be disclosed if there is a reasonable probability that the result of the proceedings would have been different had it been disclosed**. However, the mere possibility that undisclosed evidence may have helped the defense or might have affected the outcome of the trial does not establish materiality. In evaluating whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. As such, a defendant need not demonstrate there would not have been enough left to convict after discounting the inculpatory evidence in light of the undisclosed evidence, but need only show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Commonwealth v. Johnson*, 335 A.3d 685, 717 (Pa. 2025) (quotation marks, brackets, and citations omitted; emphasis added); *see also Commonwealth v. Cam Ly*, 980 A.2d 61, 76 (Pa. 2009) ("[T]he protection of *Brady* extends to the defendant's ability to investigate alternate defense theories and to formulate trial strategy.") (citation omitted)).

"***Brady*** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." ***Commonwealth v. Paddy***, 15 A.3d 431, 450 (Pa. 2011) (citation and quotation marks omitted). Furthermore, "***Brady*** evidence may not be cumulative of other evidence, cannot have been equally available to the defense, and cannot have been discoverable through the exercise of reasonable diligence[.]" ***Commonwealth v. Simpson***, 66 A.3d 253, 264 (Pa. 2013) (citations omitted; emphasis added).

Instantly, the PCRA court determined that Attorney Batz correctly opined that no ***Brady*** violation occurred, because the Commonwealth provided Ms. Morrison's interview to Attorney Galloway in advance of Appellant's first trial. PCRA Court Opinion, 3/12/25, at 15-16. While we question Attorney Batz's conclusion that the Commonwealth satisfied its ongoing ***Brady*** obligations by merely providing Appellant's prior counsel with exculpatory evidence,[15] we need not address this matter, as Appellant's

_____

[15] Discussing the apparent nondisclosure of Ms. Morrison's interview to Attorney Batz at trial, the prosecutor advised the trial court that he emailed Attorney Galloway an audio file containing Ms. Morrison's interview, and subsequently emailed Attorney Galloway a transcribed copy of Ms. Morrison's interview. N.T., 8/31-9/3/20, at 581; ***see also id.*** at 581-82 (the trial court admitting into evidence the prosecutor's emails to Attorney Galloway as Court Exhibits 1 and 2). At the PCRA hearing, Attorney Batz testified that, despite sending Attorney Galloway an inventory of the discovery materials she retrieved from his office, she was never provided Ms. Morrison's interview. N.T., 12/18/24, at 32-34.

*(Footnote Continued Next Page)*

*Brady* claim would nevertheless have entitled him to no relief on direct appeal, as Appellant failed to establish that the nondisclosure of Ms. Morrison's interview prejudiced him.

As explained above, the only potentially exculpatory evidence within Ms. Morrison's interview was her claim that the victim told Ms. Morrison that he was inside a convenience store when the first shooting incident occurred. However, at trial, the Commonwealth presented (1) cell tower evidence establishing that Appellant's cell phone was at the scene of both shooting incidents; (2) evidence that several shell casings found at the scenes of both shooting incidents matched; and (3) Ms. Goicoechea's testimony that she observed Appellant as the shooter at the scene of the first shooting incident. *See Antidormi*, 84 A.3d at 748 (stating *Brady* claims are to be evaluated within the context of the entire record). In view of this evidence, as well as Ms. Morrison's admission to fabricating her initial report to police to advance a fraudulent insurance claim, we cannot conclude that the purported nondisclosure of Ms. Morrison's interview "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Mickeals*, 335 A.3d at 24. Accordingly, Appellant's

_____

We note that Attorney Galloway was not called to testify at the PCRA hearing, and, thus, did not testify as to whether he discussed the existence of Ms. Morrison's interview with Appellant. Further, although Appellant testified at the PCRA hearing that Attorney Galloway did not apprise him of Ms. Morrison's interview, *see* N.T., 1/24/24, at 13, the PCRA court rendered no finding as to the credibility of this testimony.

ineffectiveness claim, based on Attorney Batz's failure to assert a ***Brady*** claim on direct appeal, lacks arguable merit, and entitles him to no relief.

In his fourth issue, Appellant argues that Attorney Batz was ineffective for failing to secure or present evidence proving that Appellant stayed at a hotel in King of Prussia, from December 31, 2017, to January 1, 2018, to refute his perjury charge. Appellant's Brief at 39. Appellant maintains that he "had informed Attorney Batz about making a reservation for a hotel through Booking.com or Expedia[,] and that he had visited the Philadelphia area to visit his brother." ***Id.*** (citation and quotation marks omitted). In his two-page argument, without citation to legal authority, Appellant claims that

> [t]his issue has arguable merit where Attorney Batz confirmed that [Appellant] stayed at a Hampton Inn in King of Prussia[,] and that he had gone there with [Erica], but [Attorney Batz] presented <u>no evidence at trial</u> regarding that stay[,] and did not subpoena records from Booking.com or otherwise present *any* evidence to contradict the Commonwealth's perjury charge. Attorney Batz lacked an objective[ly] reasonable basis for not serving subpoenas before the [s]econd [t]rial or presenting any evidence to refute the perjury charge.

***Id.*** at 40 (emphasis in original); ***see also*** Pa.R.A.P. 2119(a) ("The argument shall be … followed by such discussion and citation of authorities as are deemed pertinent.").

Regarding this claim, the PCRA court summarized Attorney Batz's testimony at the PCRA hearing, and offered the following cogent analysis:

> Attorney Batz testified that [Appellant] told her that he pre-booked a room at a hotel in King of Prussia, that when he arrived, the hotel computer system was down, and that he paid in cash. N.T., 1/24/24, at 29-30. Attorney Batz confirmed that [Appellant]

stayed at the Hampton Inn in King of Prussia. *Id.* at 33. However, [Appellant] could not explain to [Attorney Batz] how or when the booking occurred. *Id.* at 29-30, 62. She concluded that [Appellant] did not pay through an on[]line booking[ website]. *Id.* at 30.

[The PCRA court found] Attorney Batz's testimony credible and her conclusions as to the manner of booking and payment reasonable.

….

Attorney Batz testified that although [Appellant] maintained that he made the hotel reservation through Booking.com, information she obtained from the hotel reflected that the reservation appears to have been pre-paid close to or around the time [Appellant] arrived. *Id.* at 63. Hotel staff with whom Attorney Batz spoke during her investigation indicated that the reservation could have been made as late as the night of arrival. *Id.* at 69.

[The PCRA court found] credible Attorney Batz's testimony regarding her investigation of [Appellant's] claims regarding payment for the hotel. [The PCRA court found] reasonable her conclusion that [Appellant] did not book the hotel on[]line[,] and therefore[,] no ineffectiveness occurred in her refraining from seeking on[]line booking records by subpoena.

[The PCRA court] reject[ed] as unpersuasive [Appellant's] argument that the production of purported advance online booking would have undermined the Commonwealth's theory that [Appellant] fled, or as evidence of consciousness of guilt. [The PCRA court] also reject[ed] the argument that the Hampton Inn receipt[, admitted into evidence at the PCRA hearing as Exhibit 3,][16] supports [Appellant's] claim of advance on[]line booking. *Id.* at 1/24/24, at 5; Exhibit 3. **The receipt neither documents advance booking nor exculpates [Appellant] in that it documents [Appellant's] check-in on December 31, 2017[,]**

---

[16] Appellant's brief does not discuss the Hampton Inn receipt, and contains a single citation to Exhibit 3 to support his assertion that he checked in to the Hampton Inn at the above-described time and date. *See* Appellant's Brief at 39.

**at 4:42 a.m.**[,] and payment at check-out on January 1, 2018[,] at 12:52 p.m.

PCRA Court Opinion, 8/31-9/3/20, at 17-18 (record citations modified; emphasis added).

The PCRA court's factual findings are supported by the record, and its legal conclusions are sound. At the PCRA hearing, Appellant presented a receipt from the King of Prussia Hampton Inn reflecting that Appellant checked in at 4:42 a.m., on December 31, 2017. N.T., 12/18/23, at 15. However, Appellant produced no evidence supporting his claim that his stay in Philadelphia from December 31, 2017, to January 1, 2018, was reserved in advance, nor does Appellant explain how this speculative evidence would have refuted his perjury charge. *See Commonwealth v. Miller*, 231 A.3d 981, 992 (Pa. Super. 2020) ("The PCRA expressly requires that a petitioner 'plead and prove' by a preponderance of the evidence each element of his ineffectiveness claim." (quoting 42 Pa.C.S.A. § 9543)). Accordingly, Appellant's fourth issue lacks arguable merit and entitles him to no relief.

In his fifth issue, Appellant argues that Attorney Batz was ineffective for failing to present Erica or Ms. McKinney as alibi witnesses. Appellant's Brief at 41. Appellant maintains that, contrary to Attorney Batz's testimony at the PCRA hearing, Erica's "testimony would not have been inconsistent with phone records[,] as the call records show that after 1:32 a.m., [Appellant's] phone was not [pinging] the cell phone towers nearest the crime scene[,] and that

at 1:39 a.m., his phone was not hitting the tower nearest the crime scene."

***Id.*** at 44 (emphasis omitted).

Appellant further claims that Attorney Batz's decision not to present Ms. McKinney as a witness to corroborate Erica's account of Appellant's alibi lacked a reasonable basis and prejudiced Appellant. ***Id.*** at 46. As with Erica's proposed testimony, Appellant argues that Ms. McKinney's corroborative account of Appellant's activities in the early morning hours of December 31, 2017, was not inconsistent with Appellant's phone records:

> [T]he call records show that after 1:32 a.m., [Appellant's] phone was not hitting the two cell phone towers nearest the crime scene[,] and that at 1:39 a.m., his phone was not hitting a tower nearest the crime scene.
>
> From 2:00 a.m. to 3:00 a.m., there was no cell phone activity[,] and at 3:00 a.m.[, Appellant's] telephone hit a tower along the Pennsylvania Turnpike, [] consistent with [Erica], [Appellant], and [Ms.] McKinney's testimony [at the PCRA hearing] that [Appellant] and [Erica] were traveling to King of Prussia to stay at a Hampton Inn.

***Id.*** at 46 (record citations omitted).

In disposing of Appellant's fifth claim, the PCRA court addressed individually Attorney Batz's decision not to present Appellant's proposed alibi witnesses. Regarding Ms. McKinney, the PCRA court explained:

> As to whether or not to call … [Ms.] McKinney[] as a witness, Attorney Batz testified that she spoke with Ms. McKinney and [Appellant] before trial …. N.T., 12/18/23, at 54. Attorney Batz determined that sequestration of Ms. McKinney would be required were Ms. McKinney to testify, which became a concern for [Appellant]. ***Id.*** at 58. Attorney Batz testified that Ms. McKinney did not want to sit outside the courtroom during the trial and that

sequestration was a "sticking point" for Ms. McKinney. *Id.* at 58, 73.

After speaking with [Appellant] and Ms. McKinney, Attorney Batz concluded that both elected to have Ms. McKinney attend the trial rather than her be sequestered as an alibi witness. *Id.* at 74-75.

[The PCRA court found] credible Attorney Batz's testimony that [Appellant] and Ms. McKinney together elected to have Ms. McKinney remain in the courtroom during the trial rather than provide alibi testimony[,] which would require sequestration. [The PCRA court found] that Attorney Batz made a reasonable decision based upon the stated wishes of her client.

PCRA Court Opinion, 3/12/24, at 19-20 (record citations modified).

The PCRA court's factual findings are supported by the record, and its legal conclusion is correct. *Sandusky*, 324 A.3d at 564 (observing that we are bound by the PCRA court's credibility determinations where they are supported by the record). Our Supreme Court has stated that counsel cannot be deemed ineffective for acting in conformity with her client's instructions. *Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005).[17] Accordingly, Appellant's claim that Attorney Batz was ineffective for failing to present Ms. McKinney's testimony lacks merit.

Concerning Erica's proposed alibi testimony, the PCRA court explained as follows:

---

[17] Notably, Appellant does not address in his brief Attorney Batz's testimony that, in refraining from calling Ms. McKinney to testify, she was acting in accordance with Appellant's wishes.

- 28 -

Attorney Batz testified that she recall[ed] speaking with [Erica] because of [Erica]'s extremely difficult demeanor. N.T., 12/18/23, at 55-56. [Erica] told Attorney Batz that she did not wish to be involved in the case again, having testified at [Appellant's] first trial. *Id.* at 74. Attorney Batz described [Erica]'s demeanor as "extremely dismissive and border[ing on] hostile" about having to participate in the trial. *Id.*

Attorney Batz reviewed [Erica]'s statement[18] in advance of trial. *Id.* at 55; Notice of Alibi, 6/15/18, Exhibit A. [Attorney] Batz … found [Erica]'s alibi imperfect, that is, … [Erica's] statement did not preclude the possibility of [Appellant's] presence at the time and location of the [victim's murder]. *Id.* at 57.

Further, the Commonwealth called [Erica] to testify as a witness at trial.[19] *Id.* at 56-57. Attorney Batz did not question [Erica] about the purported alibi …. Attorney Batz felt that

---

[18] Appellant filed a notice of alibi, to which he attached, as Exhibit A, a letter written by Erica (Erica's statement). Notice of Alibi, 6/15/18, Exhibit A. Erica's statement represented the following:

On December 30th, I was not with [Appellant] during the day. I was shopping and hanging out with my friend and our kids. I dropped my daughter off with my mom around 11-11:30 at night, then went to my apartment where I met up with [Appellant] around 11:30-12 a.m. on December 31st. Around 12:30 we left my apartment and went to [Appellant's] mom's house in Hummlestown [*sic*]. We arrived around 1 a.m. then went to the Speedway to get gas around 1:30. I was with [Appellant] from about 12 a.m. the 31st of December up until the following day. We were not anywhere around Brookwood.

*Id.* (punctuation modified).

[19] Throughout her testimony at the second trial, Erica repeatedly indicated that she was unable to recall details from the days preceding the victim's murder, which she attributed to the length of time that had elapsed since the incident. *See* N.T., 8/31-9/3/20, at 253-89; *see also id.* (the prosecutor frequently directing Erica to her testimony from a year prior, wherein she was able to recall numerous details of events preceding the victim's murder).

presentation of [Erica]'s testimony would undermine the defense's credibility.[20] *Id.* at 75.

> [The PCRA court found] Attorney Batz's testimony credible as to the reasons she did not call [Erica] as a witness[,] and [concludes] that she made a reasonable strategic decision not to call [Erica as a witness].

PCRA Court Opinion, 3/12/24, at 21 (record citations modified; footnotes added).

The PCRA court's factual findings are supported by the record, and we agree with its legal conclusion. Upon review, the record belies Appellant's assertion that Erica's statement was consistent with Appellant's phone records, as those records established that Appellant was in the vicinity of the 1900 block of Brookwood Street, *i.e.*, the location of the murder (Brookwood), around the time of the murder. *See* N.T., 8/31-9/3/20, at 472 (Detective James Glucksman (Detective Glucksman) testifying that at 1:32 a.m., Appellant's cell phone was pinging the two cell towers closest to Brookwood); *id.* at 466 (Detective Glucksman testifying that the two cell towers closest to Brookwood were .430 and .460 miles from the crime scene); *see also* Notice

---

[20] Attorney Batz testified at the PCRA hearing that Appellant's phone records "kind of had him in the area [of the homicide,] and didn't necessarily line up with what Erica and [Ms. McKinney] had previously either told me or told Attorney Galloway." N.T., 12/18/23, at 57; *see also id.* at 73 (Attorney Batz testifying, "I have no doubt [that Appellant] probably went to [Erica's] house [on the date of the murder]. At some point [Appellant] picked up Erica, but I don't believe it was on the correct timeline that they were giving me based on the other evidence."); *id.* at 74 (Attorney Batz testifying she was concerned about "a lot of potential impeachment" concerning the "timelines").

of Alibi, 6/15/18, Exhibit A (Erica representing that she met Appellant "around 11:30-12 a.m. on December 31st," and that while she was with Appellant, they "**were not anywhere around Brookwood**." (emphasis added; punctuation modified)). Moreover, **Erica's statement conflicted with Appellant's own testimony at his first trial**. *See* N.T., 8/15/19, 541 (in the first trial, Appellant testifying that it was "possible" that he was near Brookwood around 12:30 a.m., on December 31, 2017, and that he was not with Erica at that time, as she was still with her daughter); *id.* at 548 (Appellant agreeing with Attorney Galloway that it was "just a coincidence" that he was near Brookwood at approximately 1:32 a.m., "a couple of minutes after [the victim] was shot and killed.").

Based on the foregoing, we agree with the PCRA court that Attorney Batz's trial strategy, which sought to maintain credibility with the jury by not presenting Erica's inconsistent alibi testimony, was reasonable. We cannot conclude that presenting Erica as an alibi witness would have "offered a potential for success substantially greater than the course" Attorney Batz pursued. *Spotz*, 84 A.3d at 311. Appellant's fifth issue merits no relief.

In his sixth and final issue, Appellant argues that the cumulative effect of Attorney Batz's alleged ineffectiveness resulted in prejudice that "undermined the fundamental fairness of the [s]econd [t]rial and denied him due process." Appellant's Brief at 48.

The Pennsylvania Supreme Court

has repeatedly held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). Thus, to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. *Commonwealth v. Sattazahn*, 952 A.2d 640, 671 (Pa. 2008).

*Commonwealth v. Koehler*, 36 A.3d 121, 161 (Pa. 2012) (citations modified); *see also Commonwealth v. Hutchinson*, 25 A.3d 277, 319 (Pa. 2011) ("A bald averment of cumulative prejudice does not" entitle a PCRA petitioner to relief). *But see Commonwealth v. Hanible*, 30 A.3d 426, 483 (Pa. 2011) ("When the failure of individual claims is grounded in lack of prejudice, [] then cumulative prejudice from those individual claims may properly be assessed." (citation omitted)).

Instantly, we have not disposed of any of Appellant's ineffectiveness claims on the grounds of lack of prejudice.[21] Accordingly, Appellant's final claim of cumulative error does not merit relief. *See Koehler*, 36 A.3d 121, 161.

Based on the foregoing, we conclude the PCRA court did not err or abuse its discretion in dismissing Appellant's first PCRA petition.

---

[21] In disposing of Appellant's third claim, we concluded Appellant's argument that Attorney Batz was ineffective for failing to raise his *Brady* issue on direct appeal lacked arguable merit, because the Commonwealth's purported nondisclosure of Ms. Morrison's interview did not prejudice Appellant.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/3/2025